UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX M. LOPEZ, *et al.*,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>MERCED COUNTY, CALIFORNIA, *et al.*,<br><br>                    Defendants. | 1:06-cv-01526 OWW DLB<br>  (Three Judge Court)<br>**FINDINGS OF FACT AND**<br>**CONCLUSIONS OF LAW RE:**<br>**PLAINTIFFS' APPLICATION FOR**<br>**PRELIMINARY INJUNCTION** |

## I.   <u>INTRODUCTION</u>

This case comes before a three-judge court, under § 5 of the Voting Rights Act ("VRA").  42 U.S.C. § 1973c ("Section 5").  Plaintiffs challenge numerous annexations, detachments, consolidations and/or formations to cities and special districts in the County of Merced, California, adopted since November 1, 1972.  On November 21, 2006, Circuit Judge Jay S. Bybee and District Judges Oliver W. Wanger and Anthony W. Ishii, appointed to the three-judge panel by the Chief Judge of the Circuit pursuant to 28 U.S.C. § 2284, heard Plaintiffs' motion for a preliminary injunction (Doc. 19), seeking to enjoin the certification of the November 7, 2006 election results in certain defendant jurisdictions.

Due to the proximity of the scheduled city council meetings at which the November 7, 2006 results were to be certified and newly-elected municipal officers sworn-in, the Court announced an oral statement of decision which denied the motion for preliminary injunction.  The parties were invited to submit

**1**

proposed findings of fact and conclusions of law.  (*See* Docs. 67
& 76.)  Having reviewed these, and all the pleadings and
supplementary materials, and having heard oral argument, the
Court finds that Plaintiffs have not demonstrated entitlement to
injunctive relief.  These Findings of Fact and Conclusions of Law
memorialize our oral decision on November 21, 2006.

## II.   BACKGROUND

Plaintiffs are citizens of the United States and are
registered voters residing in the City of Los Banos in Merced
County, California who allege they are Hispanic, Spanish-
speaking, and have been unlawfully denied voting rights, in part
based on their race and language.  (Compl. at ¶3.)  Defendants
are the County of Merced and numerous governmental units within
the County, including:  the Local Area Formation Commission of
Merced County (LAFCO), which is an administrative agency
responsible for reviewing and approving requests to annex or
change the boundaries of governmental units within the County,
*see* Cal. Gov. Code § 56375; the cities of Atwater, Dos Palos,
Gustine, Livingston, and Los Banos, all of which are
municipalities organized pursuant to California law; and
seventeen water and resource conservation special districts
within Merced County.  (*Id*. at ¶¶ 4-6.)

Plaintiffs allege that Defendants have violated § 5 of the
Voting Rights Act of 1965.  Under § 5, a covered state or
political subdivision must secure approval or "preclearance"
before enacting or seeking to administer "any voting
qualification or prerequisite to voting, or standard, practice,

**2**

1  or procedure with respect to voting different from that in force

2  or effect" on the date coverage began.  42 U.S.C. § 1973c.  A

3  covered jurisdiction can secure preclearance from either the

4  United States Attorney General or the United States District

5  Court for the District of Colombia.  *See* 28 C.F.R. § 51.1.  In

6  either an administrative proceeding before the United States

7  Attorney General or a judicial proceeding seeking a declaratory

8  judgment before the United States District Court for the District

9  of Columbia, the covered jurisdiction must demonstrate that the

10  proposed change affecting voting does not have the purpose and

11  will not have the effect of denying or abridging the right to

12  vote on account of race or color, or membership in a language

13  minority group.  *Id*.  If the covered jurisdiction cannot meet its

14  burden, the United States Attorney General will deny preclearance

15  or the United States District Court for the District of Columbia

16  will not grant a declaratory judgment approving a change

17  affecting voting.  In the absence of either type of preclearance,

18  the voting change cannot be implemented or enforced in any

19  election.  28 C.F.R. § 51.10.

20      Plaintiffs allege that, since November of 1972, Defendants

21  have adopted, approved and implemented over 200 annexations and

22  other boundary changes within the County of Merced which

23  unlawfully impair their voting rights.  (Compl. at ¶11.)

24  Plaintiffs further allege that no Defendant has obtained either

25  administrative or judicial preclearance for these changes as

26  required by § 5, but that they have nonetheless implemented and

27  continue to implement the changes.  (*Id*. at ¶¶ 38-39.)

28  Plaintiffs contend that these violations of § 5 justify

**3**

preliminary injunctive relief to restrain the Defendants from any continued implementation of the voting changes unless and until they are precleared under § 5.  *(Id*. at ¶¶ 44-45.)

Along with their Complaint, Plaintiffs initially filed, but did not set for hearing, a motion for temporary restraining order ("TRO").  (Docs. 1-2, filed Oct. 27, 2006.)  The district court then scheduled a hearing on the TRO for November 3, 2006.  (Doc. 9, filed Nov. 2, 2006.)  At that hearing, certain facts were agreed to by the parties, namely that only the Defendant municipalities of Atwater, Dos Palos, Gustine, Livingston, and Los Banos were to hold elections on November 7, not other Defendants, and that all of the challenged annexations and boundary changes in those jurisdictions had been previously submitted to the Attorney General for expedited review.  (Doc. 18 at 3-4; *see also* Doc. 13-3, Decl. of Christopher E. Skinnell at ¶¶ 5-8.)

During the TRO hearing, the parties entered into a stipulation that elections would be held on November 7, 2006, but that no Defendant municipality would finalize or certify the results of its election until either preclearance was obtained for the voting changes or the Court denied Plaintiffs' motion for preliminary injunction at a hearing to be held subsequently. (*See* Doc. 18 at 3-4.)  The Court directed the parties to file supplemental briefing on the issues identified, and set the hearing on Plaintiff's motion for preliminary injunction for November 21, 2006 before the three-judge panel. (*See id.* at 4-5.)  The parties elected not to present testimony at that hearing on the preliminary injunction.

**4**

1    Plaintiffs timely submitted supplemental authorities in
2    support of their motion, and Defendants filed oppositions.
3    Plaintiffs sought to enjoin the certification of the November 7,
4    2006 election results by Defendants.  Plaintiffs did not seek to
5    enjoin the casting of ballots by the voters, or other conduct of
6    the November 7, 2006 elections.

7    Defendants opposed the motion on the grounds that Plaintiffs
8    (1) lacked standing, and were guilty of (2) laches and
9    (3) unclean hands.  Defendants also contended the Defendant
10   cities are not subject to the preclearance requirement of § 5,
11   and that the balance of hardships favored denial of the
12   preliminary injunction.

13   With respect to standing, assuming, *arguendo,* that the
14   Defendant Cities are covered jurisdictions under § 5, Defendants
15   cited *Allen v. State Board of Elections*, 393 U.S. 544 (1969), for
16   the proposition that a § 5 suit alleging failure to comply with
17   the preclearance requirement may only be brought against a city,
18   by a resident and registered voter of that city.  Plaintiffs
19   rejoined that residency in the County of Merced satisfied the
20   standing requirement.

21   Defendants advanced the equitable defenses of laches and
22   unclean hands, based on Plaintiffs' knowledge, at least as early
23   as August 24, 2006, that their claims existed and their failure
24   to timely notify each entity to provide reasonable opportunity
25   for obtaining preclearances.  Defendants also argued that
26   Plaintiffs' delay of two full months to file this action, just
27   eleven days before the election they sought to enjoin the
28   certification of, without contacting any of the Defendants to

**5**

provide notice of the alleged violations, coupled with taking no action to set the matter for a hearing on their injunctive relief request until six days before the election, caused Defendants prejudice.

Plaintiffs argued, relying on Federal Rule of Civil Procedure 11, that the filing date was delayed because they required sufficient time to properly analyze facts and applicable law and to compile the documentation necessary to their claims before filing the complaint.  They professed no duty to inform Defendants of the need for preclearance, and that no earlier hearing on injunctive relief was required because they sought only to stop certification of election results, not the elections.

Relying on *United States v. Board of Commissioners of Sheffield, Alabama*, 435 U.S. 110 (1978), Plaintiffs disputed Defendants' contention that Defendants are not subject to the § 5 preclearance requirement.  Plaintiffs maintained that, having alleged a violation of § 5, they were entitled to injunctive relief as a matter of law, without the necessity of making any showing under the traditional test for issuance of a preliminary injunction.  To support this position, Plaintiffs cited *Lopez v. Monterey County*, 519 U.S. 9 (1996) ("*Lopez I*"), and *United States v. Louisiana*, 952 F. Supp. 1151 (W.D. La. 1997) ("Louisiana").

### III.  FINDINGS OF FACT

1.   Defendant County of Merced is a "covered political subdivision" that has been subject to the preclearance requirements of § 5 since November 1, 1972.  *See* Appendix to 28

**6**

C.F.R. Pt. 51 (listing covered jurisdictions and their respective dates of coverage).

2.    Defendant Local Area Formation Commission ("LAFCO") of Merced County is a public administrative agency through which municipalities and special districts alter boundaries within Merced County.  LAFCO has the authority to review and approve applications for boundary changes submitted either by registered voters' or property owners' signed petitions or pursuant to a resolution of the governing board of an affected municipality or local agency.  Cal. Gov't Code § 56375.

3.    LAFCO does not hold elections, nor does LAFCO have any role in the election certification process.

4.    Defendant Cities of Atwater, Dos Palos, Gustine, Livingston, and Los Banos are municipalities organized pursuant to California law, and are governmental units located within the geographic and territorial boundaries of Merced County.  (Compl. at ¶6.)

5.    Defendants Ballico Community Services District, Central California Irrigation District, Delhi County Water District, East Merced Resource Conservation District, Franklin County Water District, Hilmar County Water District, Le Grand Community Services District, Los Banos Resource Conservation District, Merquin County Water District, Midway Community Services District, Planada Community Services District, Santa Nella County Water District, Snelling Community Services District, South Dos Palos County Water District, Turlock Irrigation District, Volta Community Services District, and Winton Water and Sanitary District, are special districts organized pursuant to California

**7**

law, and are governmental units located within the geographic and territorial boundaries of Merced County.  (*Id*.)

6.    Among all Defendants named in this suit, only the Cities of Atwater, Dos Palos, Gustine, Livingston and Los Banos held elections on November 7, 2006. (Doc. 13, Jones Decl. at ¶12; Doc. 13, Skinnell Decl. at ¶10.)  The County of Merced did not hold any elections for county officers or ballot measures on that date, nor did LAFCO or any of the other special district Defendants hold elections on November 7, 2006.  *Id*.

7.    At the preliminary injunction hearing, Plaintiffs, therefore, stipulated that preliminary injunctive relief against the County, LAFCO and the special districts' was unnecessary, and limited their motion accordingly.

8.    Plaintiffs Felix M. Lopez and Elizabeth Ruiz are Hispanic, Spanish-speaking residents of the County of Merced and of the City of Los Banos, not any other city named as a defendant.

9.    No other named Plaintiff is a resident of the cities of Atwater, Dos Palos, Gustine, or Livingston.

10.   Plaintiffs knew no later than August 24, 2006 that the cities' challenged annexations, detachments, consolidations and/or formations had not received § 5 preclearances. (*See* Doc. 2, Avila Decl., Ex. 2.)

11.   Plaintiffs filed suit October 27, 2006, approximately 11 days before the November 7, 2006 election.  (Doc. 2.)

12.   Plaintiffs limited their request for injunctive relief to an injunction restraining Defendants from finalizing or certifying the results of the elections, not from conducting

**8**

elections.   (Doc. 19 at 13.)

13.   Plaintiffs did not request a hearing on their request for TRO before or at the time the complaint was filed.

14.   Before filing their complaint, Plaintiffs did not notify any Defendant of Defendants' alleged non-compliance with the Voting Rights Act of 1965, and did not give any Defendant the opportunity to cure any alleged VRA violation before filing suit.

15.   There was at least 60 days delay by Plaintiffs in filing their lawsuit from their alleged first knowledge, on August 24, 2006, of the claimed violations.

16.   Plaintiffs assert they had a large number of complex factual and legal issues to research and document which delayed filing of the complaint.

17.   Plaintiffs' counsel is highly informed and experienced in VRA litigation, and the legal issues presented were well known to him prior to filing this case.

18.   As of the date of the hearing on Plaintiffs' motion for preliminary injunction on November 21, 2006, none of the Defendant municipalities had secured preclearance for any of the annexations and other boundary changes at issue.  However, all such Defendants had submitted preclearance requests.

19.   The County of Merced requested on behalf of all the cities that the Department of Justice expedite review of the annexations pursuant to regulation, 28 C.F.R. § 51.34, and on November 2, 2006, was assured by the responsible Department of Justice personnel that the Department would use its best efforts to complete review of the annexations by November 17, 2006. (Doc. 13, Skinnell Decl. at ¶¶ 5 & 9.)

**9**

20.  The County did not inform the cities that preclearance requests had been filed for the cities, whose first knowledge of those preclearance requests or the necessity for them was the filing of this suit.

21.  Under California Law, the elections official must certify the results of that election to the governing body (in this case, the municipalities) by no later than the fourth Friday after the election.  Cal. Elec. Code § 10262.  The governing body must then meet no later than the fourth Friday after the election to declare the results of the election and install the newly elected officials.  Cal. Elec. Code § 10263.  During oral argument, several defendant cities stated that their governing bodies were meeting that same night to declare results.

22.  Defendants presented evidence that enjoining certification of the November 7, 2006 votes in Defendant cities would materially harm the cities and their voters.

i.  According to the affidavit of Dos Palos' City Clerk, the City of Dos Palos "is in crisis."  (*See* Doc. 39, Decl. of Alice Thompson, City Clerk of the City of Dos Palos, at ¶7.) Prior to the election, Dos Palos' City Council was operating with two vacancies on its City Council, and its senior management was in disarray.  (*Id*. at ¶¶ 1-5 ("The City of Dos Palos currently has an interim City Manager.  The Police Chief is on administrative leave, and the Sergeant of the Police Department position is vacant.").)  Because of the unsettled state of affairs in the  Police Department, the Merced County Sheriff's Department was temporarily providing police services to the City, which was an arrangement opposed by many citizens in Dos Palos.

**10**

(*Id.* at ¶6.)   In addition, the Dos Palos City Clerk stated that at the first meeting of the newly-elected council, set for November 21, 2006, the new City Council and Mayor were scheduled to address fundamental governance issues, along with the expansion of City water and sewer plants. (*Id.* at ¶6.)   Under the California Government Code, new council members were to take the oath of office on November 21, 2006.

     ii.   Similarly, Defendant City of Los Banos provided evidence of significant harm to the City and its voters if the election results were not timely certified. (*See generally* Doc. 38, Decl. of Lucille Mallonee, City Clerk of the City of Los Banos.)   For example, the incumbent Mayor and two incumbent councilmembers were all due to leave office upon qualification of their successors.   If the seating of the new officials were delayed, and the retiring members were unwilling to continue to serve during the pendency of this action, "the City would have only two members of its governing body [lacking a quorum to conduct business].   Under California law, a majority of the council may not be appointed, and a special election would have to be held." (*Id.* at ¶6.)

     iii.   The Los Banos City Clerk asserted that the City of Los Banos' newly-elected Mayor and Council were due to consider a proposed annexation. (*Id.* at ¶7.)   The sitting Mayor and Council deemed it appropriate to put off decision on the annexation so that the new Mayor and Council could consider the issue because "the election results have generally been regarded in the City of Los Banos as calling for a significant change in city policy with respect to annexations and growth." (*Id.* at

¶8.)

23.   The electorates of the Defendant municipalities had the justified expectation that their local votes cast in the November 7, 2006, elections would be counted.   Preventing the seating of the newly elected local decisionmakers in the cities of Dos Palos and Los Banos would have frustrated the will of the voters in those jurisdictions.

### IV.   CONCLUSIONS OF LAW

1.   The VRA contains a citizen-suit provision and a strong policy supporting enforcement of the Act to protect voters against infringement of their right to vote.   42 U.S.C. § 1973a(b).   Enforcement power is not solely vested in the Attorney General of the United States; citizens may bring suit to enforce the act.

2.   The grounds for injunctive relief are those traditionally recognized by the United States Supreme Court and the Ninth Circuit.   *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *Associated Gen. Contractors of California, Inc. v. Coalition for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).   Plaintiffs must show either a combination of probable success on the merits and the chance of irreparable harm, or that serious questions on the merits are raised and the balance of hardships tips in Plaintiffs' favor. *Associated Gen. Contractors*, 950 F.2d at 1410.

3.   The limited jurisdictional scope of the Court's review under the VRA precludes consideration of the "merits" (i.e., whether the underlying boundary changes violate the VRA or

**12**

whether voting rights of minorities are or are not being adversely affected).  *See United States v. Louisiana*, 952 F. Supp. 1151, 1159-60 & n.9 (W.D. La. 1997) (refusing to analyze the probable success on the merits prong of the traditional preliminary injunctive relief standard, but acknowledging that the balance of the harms is relevant as is the question of whether a voting change is covered by § 5).

4.   Nevertheless, the Court may examine the extent to which Plaintiffs are likely to succeed on those merits issues which are within its jurisdiction, namely issues of standing and coverage of the Defendant Cities by § 5 of the VRA.  It is also undisputed that the Court must examine the balance of the hardships.  For example, in *Merced v. Koch*, 574 F. Supp. 498, 499-500 & n.2 (S.D.N.Y. 1983), which considered a motion for preliminary injunction in a § 5 challenge, the district court indicated that the relevant inquiries were: (a) whether plaintiffs had demonstrated a likelihood of success on the merits of the allegation that § 5 applied to the election; and (b) whether the balance of hardships weighed in favor of the issuance of an injunction.

5.   *Lopez I*, which Plaintiffs cite for the proposition that they are entitled to injunctive relief as a matter of law <u>without the need to make any showing under the traditional test for issuance of a preliminary injunction</u>, the Court notes that equitable principles are relevant.  *See Lopez I*, 519 U.S. at 21-22 (suggesting that preliminary injunctive relief might be appropriate in an "extreme circumstance" where "there are <u>equitable principles</u> that justify allowing the election to

**13**

proceed.") (emphasis added).

6.   Here, in examining the likelihood of success on the merits, the district court must first address two questions: (a) whether Plaintiffs have standing even though they reside in only one of the five allegedly covered cities, and (b) whether the cities are jurisdictions covered by § 5.

7.   As to standing, both named Plaintiffs reside in Los Banos, one of the five cities against which injunctive relief is sought.   Plaintiffs maintain that their residence within a covered jurisdiction (Merced County) provides them with standing to challenge elections throughout that covered jurisdiction, without regard to residence in the subunit holding the election(s) being challenged.

8.   No Ninth Circuit case is directly on point.   However, a series of reapportionment cases brought under the VRA in the Second, Fifth, Seventh and Eleventh circuits are instructive.

a.   First, in *Fairly v. Patterson,* 493 F.2d 598 (5th Cir. 1974), plaintiffs, African-American residents of Forrest County, Mississippi, challenged a plan to reapportion voting districts for the election of the five-member Forrest County Board of Supervisors.   Plaintiffs alleged that the plan would have resulted in underrepresentation of electors residing in some but not all of the five districts.   The Fifth Circuit first concluded that "sufficient damage through underrepresentation to obtain standing will be inflicted if population equality among voting units is not present."   *Id*. at 603.   However, the "injury results only to those persons domiciled in the under-represented voting districts."   *Id*.   Accordingly, because the class

**14**

representatives failed to allege that they were domiciled in the voting district they were challenging, or that they were underrepresented, they could not properly represent a "sub-class of electors of which they may not be members." *Id. at 604.*

b. Similarly, *League of Women Voters of Nassau County v. Nassau County Board of Supervisors*, 737 F.2d 155 (2d Cir. 1984), applied *Fairly* to a challenge to reapportionment that would have affected voting for Nassau County's Board of Supervisors. *Id*. at 156. The Second Circuit held that some of the plaintiffs, who resided in overrepresented municipalities within Nassau County lacked standing, while two other plaintiffs, who resided in underrepresented political subdivisions had standing to sue. *See also Wright v. Dougherty County*, 358 F.3d 1352, 1355 (11th Cir. 2005)(per curiam) (applying *Fairly* in a similar case to find that "injury results only to those domiciled in the under-represented voting districts"); *Minority Police Officers Ass'n of South Bend v. City of South Bend,* 721 F.2d 197, 202 (7th Cir. 1983) (same).

9. All these cases concern county-wide electoral policies. These cases stand directly for the proposition that, where it is alleged that a county-wide policy results in underrepresentation of electors residing within certain county sub-units, only individuals residing within underrepresented districts have standing to challenge the county-wide policy and the county-wide election, because only those residing in underrepresented districts will be injured by the election. These cases do not directly address whether an individual residing in one municipality within a covered county has standing to challenge a

**15**

municipal election in a separate municipality (i.e., one in which the plaintiff is not a resident) within the same covered county. However, these cases all stand for the proposition that plaintiffs must be injured by a challenged policy or election to have standing, and injury is established by domicile in the underrepresented district.

10.  Plaintiffs assert that any resident of the covered jurisdiction has standing to challenge the apportionment of voting districts in any subunit of the covered jurisdiction regardless of whether or not they reside in that subunit.  This approach to standing would mean that if the State of California were a covered jurisdiction, a resident of Los Angeles would have standing to challenge non-preclearance of a voting district in San Francisco.  This does not satisfy the required element of injury in fact, as there can be no infringement of a plaintiff's right to vote in an election in which he or she is not eligible to vote.

11.  Consequently, the two named Plaintiffs, Mr. Lopez and Ms. Ruiz, who allege they are residents of the City of Los Banos, only have standing to challenge the municipal elections within Los Banos.  They do not have standing to challenge changes to the voting districts of the other defendant cities and, consequently, cannot obtain injunctive relief against those jurisdictions.

12.  As to whether Los Banos is covered under § 5, Defendants argue that it is not subject to the requirements of the VRA.  The Voting Rights Act mandates preclearance of any changes to voting districts for covered states or political subunits.  The State of California is not a covered jurisdiction,

but the County of Merced is a covered "political subdivision" under § 5 of the VRA.  Defendants argue that Los Banos is a political subunit of the State of California and not the County of Merced.  (*See, e.g.*, Doc. 29, County of Merced's Opposition to Application for Preliminary Injunction, filed Nov. 17, 2006; Doc. 34, City of Atwater Opposition to Plaintiff's Motion for Preliminary Injunctive Relief, filed Nov. 17, 2006.)  They argue, therefore, that Los Banos is not subject to the preclearance requirements of § 5.  This court assumes arguendo-solely for purposes of Plaintiff's preliminary injunction motion-that Plaintiffs made a colorable argument under *Sheffield*, 435 U.S. 110, that Defendant Los Banos is subject to § 5 preclearance obligations.

13.  Turning to equitable considerations, we find that Defendants have not demonstrated by a preponderance of the evidence that the doctrine of laches, alone, should bar Plaintiffs' motion for preliminary injunction.  To establish laches, Defendants must show that (1) Plaintiffs delayed inexcusably in the assertion of a known right and (2) that Defendants have been prejudiced as a result of that delay.  *See O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1067 (9th Cir. 2006).

14.  Plaintiffs excuse their delay in filing by claiming that they had a large number of historical, factual issues concerning boundary changes to research and present in the complaint.  However, Plaintiffs presented no evidence of when their investigation began or what research was performed, except for a reference to August 2006.

15.  Plaintiffs offered no explanation for why the inquiry

**17**

and research did not commence until August 2006 when the alleged violations go back thirty-four years.  Absent this explanation, questions arise about the necessity to present the court with an eleventh-hour, last minute, "urgent" request that has far-reaching consequences to the voting processes in the Defendant Cities.

16.  The lateness of the filing of Plaintiffs' complaint is troubling, but without a fully developed record, Plaintiffs' assertion that Federal Rule of Civil Procedure 11 dictated the extra time needed for factual and legal investigation is a colorable contention of excuse for delay.  Absent a more complete record, we do not find that Plaintiffs' claim is bared by laches.

17.  The doctrine of "unclean hands" is also inapplicable to Plaintiffs' request for injunctive relief.  The doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (citing *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)).  Plaintiffs' hands are not "unclean" because of their failure to notify the Defendant jurisdictions of their non-compliance with the VRA before filing the instant suit.  No authority is presented that Plaintiffs had a legal pre-suit filing duty to disclose non-compliance to Defendants.  It is the responsibility of the individual governmental entities to know the law and to follow it.

18.  Finally, we turn to the balance of hardships. There is no dispute that the balance of the hardships must be analyzed in

**18**

deciding whether to issue injunctive relief.

19.  We find that the balance of hardships tips in favor of the Defendants.

20.  The municipal voters of Los Banos had justified expectations that their votes would be counted in important and highly disputed local elections. We, like other courts faced with similar situations, are reluctant to set aside the results or prevent certification of an election. *See, e.g.*, *Lopez v. Hale*, 797 F. Supp. 547, 550 (N.D. Tex. 1992)(three-judge § 5 court) ("Here, the primary, once conducted ... created expectation interests that cannot lightly be discounted.  The overriding purpose of the Act is to facilitate citizens' right to participate in the electoral process.  While the Act permits that process to be interrupted where requirements such as preclearance have not been met, we do not enthusiastically consider setting aside an election that has occurred...."); *United States v. City of Houston*, 800 F. Supp. 504, 506 (S.D. Tex. 1992)(three-judge § 5 court) ("When elections have been held even under a voting scheme that does not technically comply with section 5 the people have chosen their representatives.  Neither the Justice Department nor this court should lightly overturn the peoples' choices."); *see also Allen v. State Bd. of Elections*, 393 U.S. 544, 572 (1969) (declining to set aside elections held under unprecleared voting; because it was debatable that defendants were covered by § 5, there had been "no deliberate defiance"). Although all these cases concern elections already held, here the timing of the suit and request for injunctive relief six days before the election and shortly before the required state law

**19**

election certification dates interferes with voters' expectations and the orderly conduct of public elections.

21.   An injunction against certification of election results would work significant hardship on Los Banos, effectively depriving the city's voters of their elections.   Under California law, the election results must be certified within time periods that cannot here be satisfied if an injunction issues.   Absent certification, existing councilmembers would continue to hold their seats until a new election.   Such disenfranchisement under all the circumstances of this case is inequitable, particularly in light of the inability of the City to form a quorum and conduct business absent the seating of new members of its governing body.

22.   Denying preliminary injunctive relief does not disadvantage Plaintiffs.   The primary goal of injunctive relief in a § 5 challenge "must be to ensure that the covered jurisdiction submits its election plan to the appropriate federal authorities for preclearance as expeditiously as possible." *Lopez I*, 519 U.S. at 10.   That goal has already been substantially met in this case.   Plaintiffs' interests are protected because the Defendant jurisdictions have submitted for preclearance by the United States Attorney General every annexation or other boundary change that is at issue.

23.   In *Lopez I,* the United States Supreme Court suggested that an injunction might not be appropriate where "extreme circumstances" exist.   Although the Supreme Court did not define "extreme circumstances," it suggested that such a circumstance may be present when "a seat's unprecleared status is not drawn to

**20**

the attention of the [covered jurisdiction] until the eve of the election and there are equitable principles that justify allowing the election to proceed." *Lopez I,* 519 U.S. at 21-22 (citing *Clark v. Roemer*, 500 U.S. 646, 654-55 (1991)).

24.   In both *Lopez I* and *Clark*, no such "extreme circumstance" existed because the defendant jurisdictions were aware of their potential preclearance violations months if not years before the lawsuits.  Here, although the County of Merced submitted the preclearance requests for the cities, no city official was notified of such submissions before this lawsuit was filed.  Los Banos was not aware of potential preclearance litigation and only learned of the litigation by the faxed notices of the lawsuit after October 27, 2006, less than ten days before (i.e. on the eve of the election).  Plaintiffs' delay in seeking to give notice of its request for an ex parte TRO is unjustified, because it further compressed the time for the defendants' responses, even if the restraint sought was not against holding the elections, but rather certification of election results.

25.   At the hearing, Plaintiffs' counsel acknowledged that he intentionally waited to set any hearing on the TRO request. Plaintiffs "only sought to enjoin certification of the election results."  This further delayed notice to Defendants.

26.   This case is also distinguishable from *Louisiana*, 952 F. Supp. 1151, where the defendants had known for several years that their annexations were subject to the preclearance requirements of § 5 and did nothing.

**21**

27.   The combination of Plaintiffs' unexplained delays; the submission by Defendants for § 5 review of all relevant preclearance requests to the Department of Justice; the urgent nature of local issues in the elections; and the justified expectations of Los Banos's electorate, all converge to amount to "extreme circumstance" discussed in *Lopez I*, 519 U.S. at 21, and warrants denying the preliminary injunction.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is **DENIED.**

TO THE EXTENT ANY FINDING OF FACT MAY BE INTERPRETED AS A CONCLUSION OF LAW AND ANY CONCLUSION OF LAW MAY BE INTERPRETED AS A FINDING OF FACT, IT IS SO INTENDED.

**SO ORDERED**

**DATED: January 26, 2007.**


        ___/s/ Oliver W. Wanger___
        **OLIVER W. WANGER**
        **United States District Judge**


        ___/s/ Jay S. Bybee___
        **JAY S. BYBEE**
        **United States Circuit Judge**


        ___/s/ Anthony W. Ishii___
        **ANTHONY W. ISHII**
        **United States District Judge**