1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7        EASTERN DISTRICT OF CALIFORNIA
8
9   FELIX M. LOPEZ, et al.,          )   1:06-cv-1526 OWW DLB
                                     )   (Three Judge Court)
10              Plaintiffs,          )
                                     )   MEMORANDUM AND DECISION RE
11      v.                           )   PLAINTIFFS' MOTION FOR
                                     )   VOLUNTARY DISMISSAL (DOC.
12  MERCED COUNTY, CALIFORNIA, et    )   181) AND DEFENDANT'S MOTION
    al.,                             )   FOR SUMMARY JUDGMENT (DOC.
13                                   )   184)
                Defendants.          )
14                                   )
    _____  )
15
16
17                I.   INTRODUCTION

18      On November 15, 2007, this case came before a three-judge

19  court, Circuit Judge Jay S. Bybee and District Judges Oliver W.

20  Wanger and Anthony W. Ishii, presiding, duly appointed to sit as

21  a three-judge panel by the Chief Judge of the Circuit, on

22  Plaintiffs Felix M. Lopez ("Lopez"), Elizabeth Ruiz ("Ruiz") and

23  Mexican American Political Association ("MAPA") motion for

24  voluntary dismissal of Defendant City of Los Banos ("Los Banos"),

25  and on Defendant County of Merced's motion for summary judgment

26  on Plaintiff's Second Amended Complaint ("SAC").  The parties

27  appeared as follows:  Joaquin Avila, Esq., and Robert Rubin,

28  Esq., appeared on behalf of Plaintiffs; Christopher Skinnell,

                              1

1  Esq., Marguerite L. Nielsen, Esq., and James Fincher, Esq.,

2  appeared on behalf of Defendant County of Merced; and Joseph

3  Ellinwood, Esq., appeared on behalf of the City of Los Banos.

4      Having reviewed all the pleadings and supplemental

5  materials, and hearing oral argument, Plaintiffs' motion for

6  voluntary dismissal as to the City of Los Banos is granted and

7  Defendant County of Merced's motion for summary judgment for lack

8  of standing is granted.

9

10                    II.   **BACKGROUND**

11     Plaintiffs Lopez and Ruiz are citizens of the United States

12  and are registered voters residing in the City of Los Banos in

13  Merced County, in the State and Eastern District of California,

14  Fresno Division.  Plaintiff MAPA is a statewide community

15  organization dedicated to democratic principles of political

16  representation for Latinos; its purpose includes recruiting and

17  advising Latino candidates.  (Compl. at ¶¶3-4.)

18     Defendant City of Los Banos is a city organized under the

19  laws of the State of California and is located within the

20  boundaries of Merced County.  (*Id.* at ¶¶6-7.)  Defendant County

21  of Merced is a "covered political subdivision" subject to the

22  requirements of Section 5 of the Voting Rights Act of the United

23  States ("VRA"), 42 U.S.C. § 1973c ("Section 5").

24     On September 23, 1975, Merced County was listed in the

25  Federal Register as a political subdivision covered under Section

26  4(b) of the Voting Rights Act of 1965, as amended by the Voting

27  Rights Act of 1975.  40 Fed.Reg. 43,746 (Sept. 23, 1975); 28

28  C.F.R., Appx. to Part 51 (list of covered jurisdictions and dates

                              2

of coverage).[1]   Once subject to Section 5, a covered jurisdiction may not seek to administer any voting changes that are different from those that were in effect on November 1, 1972, unless that change has been "precleared" through administrative preclearance by the Attorney General or judicial preclearance by the United States District Court for the District of Columbia.   28 C.F.R. § 51.1 (regulatory procedures for administering the VRA).

Plaintiffs allege in their SAC that Defendant Los Banos is a political subunit subject to the requirements of Section 5 of the VRA and failed to obtain the necessary approval pursuant to Section 5 for the adoption or implementation of changes in election date for municipal elections and of changes affecting the number of vacancies within a given election for electing members to the City of Los Banos City Council.   (Compl. ¶10.)

Plaintiffs also allege that Defendant County of Merced has failed to obtain the necessary approval pursuant to Section 5 for the adoption, approval or implementation of over 150 polling place changes that occurred in the 1970s and 1980s throughout the County of Merced, as detailed in a spreadsheet in Paragraph 12 of the SAC and Exhibit A in Plaintiffs' Disputed Statement of Material Facts.   *See* Doc. 1, Compl., Spreadsheet, ¶12 and Doc. 201, Plaintiffs' Statement of disputed Material Facts in Opposition to County of Merced's Motion for Summary Judgment ("PSDF"), Exhibit A Spreadsheet.   The polling place changes described in the SAC and PSDF affected elections during the

---

[1] The 1975 Amendment to the VRA became effective on August 6, 1975.  Pub. L. No. 94-73, 89 Stat. 400.

period March 1974 through April 1980 that occurred in various cities, special districts and annexations within County of Merced: from Anderegg, to Los Banos to AB-5.  (Compl. ¶12 and PSDF, Exhibit A.)

Under Section 5, a covered state or political subdivision must secure approval or "preclearance" before enacting or seeking to administer "any voting qualification or prerequisite to voting, or standard practice, or procedure with respect to voting different from that in force or effect on November 1, 1972."  42 U.S.C. § 1973c.  In either an administrative proceeding before the United States Attorney General or a judicial proceeding seeking a declaratory judgment before the United States District Court for the District of Columbia, the covered jurisdiction must demonstrate that the proposed change affecting voting "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group."  28 C.F.R. § 51.1.  If the covered jurisdiction cannot meet its burden, the United States Attorney General will deny preclearance or the United States District Court for the District of Columbia will not grant a declaratory judgment approving a change affecting voting.  In the absence of either type of preclearance, the voting change cannot be implemented or enforced in any election.  *Id.*

The VRA also contains a citizen-suit provision and a strong policy statement supporting enforcement of the VRA to protect voters against infringement of their right to vote.  42 U.S.C. § 1973a(b).  Enforcement power is not solely vested in the Attorney General of the United States; citizens may also bring

4

suit to enforce the VRA in federal court.  The limited jurisdictional scope of the Court's review under the VRA precludes consideration of the "merits," i.e., whether the underlying polling place changes violate the VRA or whether voting rights of minorities are or are not being adversely affected.  *See United States v. Louisiana*, 952 F. Supp. 1151, 1159-60 & n.9 (W.D. La. 1997).

Plaintiffs move under Fed. R. Civ. P. 41(a)(2) to voluntarily dismiss Defendant Los Banos from the suit after Los Banos received notification that its two challenged voting changes had been submitted for preclearance and received administrative preclearance from the Attorney General pursuant to Section 5 of the VRA.  (Doc. 193)

Defendant County of Merced brings a motion for summary judgment on Plaintiffs' SAC claiming that Plaintiffs do not have standing to bring suit, the suit is barred by laches, Paragraphs 16 and 17 of the SAC fail to state a claim with their "Catch-All" allegations and further, the alleged polling place voting changes in Merced County from twenty to thirty years ago do not require preclearance because they have either been: (1) precleared, (2) abandoned and returned to the benchmark location upon designation of County of Merced as a covered jurisdiction or (3) are no longer being administered because they were superceded by a subsequent, precleared voting change.  Therefore there is no basis for injunctive and declaratory relief.

### III.   VOLUNTARY MOTION TO DISMISS

Defendant City of Los Banos filed a non-opposition to

1  Plaintiffs' motion to dismiss and requests that the court enter a

2  final judgment dismissing the complaint pursuant to Fed. R. Civ.

3  Proc. Rule 54(b).  (Doc. 193.)  Defendant County of Merced also

4  filed a non-opposition to Plaintiffs' motion to dismiss, and

5  requests the dismissal be with prejudice.  (Doc. 194.)  At the

6  hearing, Plaintiffs' counsel notified the Court that they agree

7  Defendant Los Banos should be dismissed from the action with

8  prejudice.  11/15 Trial Tr., p. 7:6-10.

9        Plaintiffs' allegations against Defendant Los Banos in their

10  SAC are as follows:

11              10.  Defendant Political Subunit City of Los Banos has
              adopted, approved and implemented a change in election
12              date for municipal elections and a change affecting the
              number of vacancies within a given election for
13              electing members to the City of Los Banos City Council.
              These changes affecting voting were adopted, approved,
14              and implemented by Defendant Political Subunit and
              constitute voting qualifications or prerequisites to
15              voting, or standards, practices, or procedures with
              respect to voting different from those that were in
16              force or effect on November 1, 1972.  Under § 5 of the
              Voting Rights Act, 42 U.S.C. § 1973c, Defendant City of
17              Los Banos must submit these changes affecting voting to
              the United States Attorney General or the United States
18              District Court for the District of Columbia for § 5
              preclearance.

19

20  (Doc. 172, ¶10.) (emphasis added).  While Defendants dispute that

21  the City of Los Banos is subject to Section 5 preclearance

22  requirements, on July 20, 2007, County of Merced, in response to

23  Plaintiffs' allegations in Paragraph 10 of the SAC, filed with

24  the Court a notice of receipt of preclearance of the two

25  challenged voting changes.  (Doc. 174.)  The County's notice of

26  preclearance states that "on July 16, 2007, the United States

27  Attorney General granted the County of Merced's request as to:

28  (1) the City of Los Banos' ordinance moving its general municipal

6

1  election to coincide with the statewide general election in
2  November of even-numbered years, and (2) the City's one-time
3  shortening of a councilmember's term in 1994."  The letter from
4  the United States Attorney General, dated July 16, 2007, was
5  attached to the notice confirming receipt of the changes for
6  preclearance and stating there were no objections.

7      A voluntary dismissal by a plaintiff must be authorized by
8  court order after defendant has filed an answer or a motion for
9  summary judgment.  "Once the defendant has filed a summary
10 judgment motion or answer, the plaintiff may dismiss the action
11 only by stipulation, Rule 41(a)(1)(ii), or by order of the court,
12 'upon such terms and conditions as the court deems proper' Rule
13 41(a)(2)."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394
14 (1990).  Generally, the dismissal is without prejudice unless
15 otherwise ordered by the court.

16     Defendant County of Merced filed its motion for summary
17 judgment prior to Plaintiffs' motion for voluntary dismissal.
18 However, County of Merced has filed a non-opposition to the
19 dismissal motion.  Defendant Los Banos has also filed a non-
20 opposition to Plaintiffs' motion for voluntary dismissal.  A
21 motion for voluntary dismissal under 41(a)(2) should be granted
22 "unless a defendant can show that it will suffer some plain legal
23 prejudice as a result."  *Smith v. Lenches*, 263 F.3d 972, 975 (9th
24 Cir. 2001).  Neither Defendant has claimed it will suffer any
25 legal prejudice, nor is any apparent to the Court.  All parties
26 agree the action against Los Banos should be dismissed with
27 prejudice.

28     For the foregoing reasons, Plaintiffs' motion for voluntary

7

1   dismissal of Defendant Los Banos is GRANTED WITH PREJUDICE.

2

3                    IV.   <u>MOTION FOR SUMMARY JUDGMENT</u>

4        Summary judgment is warranted only "if the pleadings,

5   depositions, answers to interrogatories, and admissions on file,

6   together with the affidavits, if any, show that there is no

7   genuine issue as to any material fact."  Fed. R. Civ. P. 56(c);

8   *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

9   Therefore, to defeat a motion for summary judgment, the non-

10  moving party must show (1) that a genuine factual issue exists

11  and (2) that this factual issue is material.  *Id.*  A genuine

12  issue of fact exists when the non-moving party produces evidence

13  on which a reasonable trier of fact could find in its favor

14  viewing the record as a whole in light of the evidentiary burden

15  the law places on that party.  *See Triton Energy Corp. v. Square

16  D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v.

17  Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  Facts are

18  "material" if they "might affect the outcome of the suit under

19  the governing law."  *Campbell*, 138 F.3d at 782 (quoting *Anderson*,

20  477 U.S. at 248).

21       The nonmoving party cannot simply rest on its allegations

22  without any significant probative evidence tending to support the

23  complaint.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

24  2001).

25                  [T]he plain language of Rule 56(c) mandates the entry
                    of summary judgment, after adequate time for discovery
26                  and upon motion, against a party who fails to make a
                    showing sufficient to establish the existence of an
27                  element essential to that party's case, and on which
                    that party will bear the burden of proof at trial.
28

                                  **8**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment.  *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).  Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party.  *Id.; Anderson*, 477 U.S. at 255.

## V.   STANDING ANALYSIS

Standing is a threshold inquiry.  "The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention."  *Warth v. Seldin*, 422 U.S. 490, 517-518 (1975).  The question of standing typically involves two inquiries "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Id.* at 498.  The case or controversy doctrine under Article III of the United States Constitution sets limits on the federal court to adjudicate only actual cases and controversies.  U.S. Const. art. III § 2, cl. 1.  "To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that [1] he has suffered 'injury in fact,' [2] that the injury is 'fairly traceable' to the actions of the defendant, and [3] that the injury will likely be redressed by a favorable decision."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To have standing, a litigant is required to have a concrete particularized injury, as opposed to a generalized grievance. *U.S. v. Hays*, 515 U.S. 737, 742-743 (1995).

While *Allen v. State Board of Elections*, 393 U.S. 544, 557 (1969), establishes that it "is consistent with the broad purpose of the Act [Voting Rights Act] to allow the individual citizen standing to insure that his city or county government complies with the § 5 approval requirements," a private litigant still must satisfy the standing requirement that he suffered a "distinct and palpable injury to himself," *Warth*, 422 U.S. at 501, and show that such injury is likely to be redressed if the requested relief is granted.  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979).  Defendant's challenge to Plaintiffs' standing is addressed primarily on Article III's "injury-in-fact" requirement.

The doctrine of standing "requires careful judicial examination of a complaint's allegations to ascertain whether the particular Plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 598 (1975).

A.   <u>STANDING - MAPA</u>

*Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977), establishes that an association has standing to

10

bring suit when:

>>> (a) Its members would otherwise have standing to sue in their own right;
>>> (b) The interests it seeks to protect are germane to the organization's purpose; and
>>> (c) Neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt* further recognizes:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.  If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Hunt*, 432 U.S. at 343 (quoting *Warth*, 422 U.S. at 515).

### 1.   Immediate or Threatened Injury

To meet *Hunt's* first prong, the "association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."  *Hunt*, 432 U.S. at 342 (quoting *Warth*, 422 U.S. at 511).  Individual members have standing in their own right under Article III, if: they have suffered an "injury in fact" that is, concrete and particularized, actual and imminent; the injury is fairly traceable to the challenged action of the Defendant; and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); quoted in *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1153, 1147 (9th Cir. 2000).  A mere "abstract concern," *Simon v.*

11

*Eastern & Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 (1976), or "special interest" in a public issue, *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972), is legally insufficient to confer standing.

### a.   Injury in Fact

MAPA alleges that its organizational purpose and mission is to advance the democratic principle of political representation for Latinos, by recruiting and advising Latino candidates at every level of government.  MAPA contends its purpose is thwarted by the failure of Merced County to submit and to obtain preclearance for changes in County voting practices which has required MAPA to divert its limited resources to assist Latino residents in those jurisdictions and to advocate that jurisdictions comply with preclearance procedures.  Although these allegations, which are legal conclusions, might satisfy the injury in fact requirement, Plaintiffs have submitted no admissible evidence showing that MAPA or any MAPA representative has taken any action to petition government, advanced any objective of this lawsuit, or expended any money or other resource in support of its alleged efforts to achieve voting change preclearances in Merced County.

### b.   Generalized Harm

"[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant the exercise of jurisdiction.  *Warth*, 422 U.S. at 499.  "[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests

12

1  of third parties." *Id.*

2      In *Warth*, the association sought to represent the interests

3  of tax payers or persons of low or moderate income. *Id.* at 512.

4  The Supreme Court found the association's grievances too general

5  in nature to permit standing. *Id.* at 515-516. Here, MAPA's

6  interest is a generalized grievance against violations of the

7  Voting Rights Act, shared in substantially equal measure by all

8  or a large class of voting citizens who reside in the County of

9  Merced. MAPA does not allege that even one member of its

10  association is directly injured by the alleged VRA violations

11  based on a member's residence within any covered voting precinct.

12      Although declaratory and injunctive relief might be

13  available, MAPA has not provided evidence that any member has

14  suffered immediate or threatened injury as a result of the

15  challenged action.

16      2.   Organization's Purpose

17      MAPA's purpose is to advance the democratic principle of

18  political representation for Latinos, including through

19  recruiting and advising Latino candidates at any level of

20  government. Here, there is no evidence that MAPA's political

21  objectives have been actively frustrated or abrogated by the

22  alleged lack of preclearances over twenty-five years ago.

23      3.   Individual Member Participation

24      The participation of individual members of an association is

25  not required when the claim and relief requested do not demand

26  individualized proof on the part of association members.

27  *Associated General Contractors of California, Inc. v. Coalition*

28  *for Economic Equity*, 950 F.2d 1401, 1408 (9th Cir. 1981); *El*

1  *Rescate Legal Servs., Inc. v. Executive office of Immigration*
2  *Review*, 959 F.2d 742, 748 (9th Cir. 1991) (associational standing
3  found where defendant's policies frustrated plaintiff's declared
4  goals and required the organization to expend resources to
5  represent members that it would otherwise spend in other ways).

6       4.   *Havens Realty Corp.*

7       Plaintiffs' summary judgment opposition provides no legal
8  authority nor any supporting evidence that MAPA has
9  organizational standing under the Voting Rights Act.  However, at
10 oral argument, Plaintiffs orally cited *Havens Realty Corp. v.*
11 *Coleman*, 455 U.S. 363, 379 (1982), the seminal organizational
12 standing decision.  *Havens Realty* is a Fair Housing Act case.
13 Plaintiffs provided no legal analysis to support its application
14 in a Voting Rights Act suit.  *See* 11/15 Trial Tr. 37:22-38:11;
15 57:24-58:7; Doc. 199, Pltf.'s Opposition.  Defendant County of
16 Merced was not given the opportunity to fully brief a reply to
17 Plaintiffs' attempt to assert standing on behalf of MAPA.

18      Even assuming, *arguendo*, that organizational standing
19 applies in a § 5 Voting Rights Act suit for preclearance, *Havens*
20 *Realty Corp.* is instructive.  There, the Supreme Court agreed
21 that HOME, a non-profit organization, had sufficiently alleged
22 organizational standing.  HOME's alleged purpose "was to make
23 equal opportunity in housing a reality in the Richmond
24 Metropolitan Area" and it claimed its purpose was frustrated by
25 Defendants' racial steering practices which deterred equal access
26 to housing through counseling and other referral services.  HOME
27 alleged it had to devote significant resources to identify and
28 counteract the defendant's racial discriminatory steering

14

1  practices.  *Havens Realty Corp.*, 455 U.S. at 368, 374, 378.  The

2  Supreme Court found HOME had sufficiently alleged that the

3  defendants' action had impaired the non-profit's purpose and

4  suffered a "concrete and demonstrable injury to the

5  organization's activities – with the consequent drain on the

6  organization's resources."  *Id.* at 379;[2] *see also Sierra Club v.*

7  *Morton*, 405 U.S. 727, 739 (1972).[3]

8      As in *Havens Realty*, Plaintiffs' SAC asserts MAPA has

9  standing on the basis of harms suffered in its organizational

10  capacity from Merced County's failure to submit and obtain

11  preclearance for polling place changes.  The SAC alleges that

12  MAPA is a statewide community organization founded in 1960 with

13  members throughout California, including Merced County.  (Compl.

14  ¶4.)  Its mission is to advance the democratic principle of

15  political representation for Latinos, including through

16  recruiting and advising Latino candidates at every level of

17  government.  (*Id.*)  The SAC contends that MAPA's purpose is

18  

---

19      [2] An organization claiming standing due to an injury to
20  itself must demonstrate more than a "setback to the
    organization's abstract social interests."  *Id.*

21      [3] In a Mississippi District Court, Section 2 Voting Rights
22  Act case, the court cited *Havens Realty Corp.*, and stated that
    "Inasmuch as the plaintiffs have shown that the challenged
23  statutes ... burden their organizational efforts to assist
    prospective voters in registering, the court finds that all of
24  the plaintiffs have standing to sue...."  *Mississippi State*
    *Chapter, Operation Push v. Allain*, 674 F.Supp. 1245, 1261 (N.D.
25  Miss. 1987) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363
26  (1982)).  Two of the plaintiffs were organizations that engaged
    "in voter registration drives and other activities designed to
27  increase black opportunities to participate in the political
28  process."  *Id.* at 1248.

1   "thwarted by the failure or refusal of various jurisdictions,
2   including Merced County, to submit and obtain preclearances for
3   changes in their voting practices.  MAPA has been forced to
4   divert its limited resources to assist Latino residents in these
5   jurisdictions, and to advocate that the jurisdictions comply with
6   preclearance procedures." (*Id.*)  However, Plaintiffs' opposition
7   to the summary judgment motion is silent with regard to legal
8   authority that MAPA has standing as an organization under the VRA
9   and to evidence that MAPA has suffered organizational harm,
10  including any evidence that MAPA actually diverted significant
11  organizational resources in an effort to assure Hispanic voter
12  rights.[4]  "In such a situation, there can be no genuine issue as
13  to any material fact, since a complete failure of proof
14  concerning an essential element of the nonmoving party's case
15  necessarily renders all other facts immaterial." *Celotex Corp.*,
16  477 U.S. at 322-23 (internal quotation marks omitted).  There is
17  no evidence to support MAPA's organizational standing.

18      5.   Conclusion

19      More than conclusory allegations of standing are required to
20  survive a summary judgment challenge.  "[T]he plaintiff bears the
21  burden of providing specific facts to prove each element of
22  standing" on a summary judgment motion.  *Churchill County v.*
23  *Babbitt*, 150 F.3d 1072, 1077 (9th Cir. 1998).  The Supreme Court

24

25
    _____

26      [4] Plaintiffs' declaration in opposition to summary judgment
    by *Joaquin Avila* attempts to provide evidence of standing on
27  behalf of individual Plaintiffs Ruiz and Lopez, but it offers no
    evidence of standing on behalf of MAPA.  *See* Avila Decl., Doc.
28  200.

16

1  has described a plaintiff's burden of proving standing at various

2  stages of a case as follows:

3      At the pleading stage, general factual allegations of
       injury resulting from the defendant's conduct may
4      suffice, for on a motion to dismiss we presume that
       general allegations embrace those specific facts that
5      are necessary to support the claim.  *In response to a
       summary judgment motion, however, the plaintiff can no
6      longer rest on such 'mere allegations," but must "set
       forth" by affidavit or other evidence "specific facts,"
7      Fed.Rule Civ.Proc. 56(e)*, which for purposes of the
       summary judgment motion will be taken to be true.  And
8      at the final stage, those facts (if controverted) must
       be supported adequately by the evidence adduced at
9      trial.

10  *Lujan v. Defenders of Wildlife*, 504 U.S. at 561.  (emphasis

11  added).

12      MAPA has offered no facts to establish its standing.  MAPA

13  lacks standing under the SAC and judgment for the County is

14  appropriate.  The County's motion for summary judgment against

15  MAPA is GRANTED.

16

17  B.   STANDING - LOPEZ AND RUIZ

18      The second standing challenge centers around Plaintiffs'

19  Lopez's and Ruiz's ability to bring a § 5 Voting Rights Act

20  challenge against the County of Merced for polling place changes

21  within the County.  An "aggrieved person" has standing to bring

22  suit under Section 5 of the VRA to challenge a voting rights

23  procedure.  42 U.S.C. § 1973a.

24      Merced County alleges in its summary judgment motion that

25  the individual Plaintiffs lack standing to bring the suit because

26  there is no evidence any Plaintiff is an "aggrieved person" who

27  has suffered an "injury-in-fact."  Defendants argue that

28  Plaintiffs fail to establish "Article III minima: A plaintiff

17

1  must always have suffered a distinct and palpable injury to

2  himself," *Warth v. Seldin*, 422 U.S. 490, 501 (1975), "that is

3  likely to be redressed if the requested relief is granted."

4  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 101

5  (1979).

6       Individual Plaintiffs' complaint alleges they are City of

7  Los Banos residents and registered voters in the County of Merced

8  with standing to challenge polling place changes which were

9  administered and implemented by the County of Merced throughout

10 the County during the 1970s and 1980s.  Plaintiffs maintain that

11 their residence within a covered jurisdiction (Merced County)

12 provides them with standing to challenge polling place changes

13 throughout that covered jurisdiction, without regard to being a

14 registered voter at the time the polling place change occurred

15 and without regard to their own polling place precinct being

16 changed.

17      The list of polling place changes affected various precincts

18 within the cities, communities and other unincorporated areas in

19 Merced County:

20              Anderegg, Atwater, Ballico, Bear Creek North, Bloss,
               Cavannah, Celeste, Cressey, Delhi, Dickenson, Dos
21             Palos, El Nido, Escholtiza, Farmdale, Franklin,
               Gustine, Hartley, Hilmar, Le Grand, Lincoln, Lingard,
22             Livingston, Los Banos, McSwain, Merced, Miller,
               Mitchell, Monroe, Nevada, Plainsburg, Planada, Raisin,
23             Rotterdam, Santa Nella, Santa Rita, Snelling, South Dos
               Palos, Stevinson, Swan, Washington, Winton, Yosemite,
24             A-1, A-2, A-3 AND AB-5.

25      The list of affected elections where polling places were

26 relocated include: March 1974, June 1974, November 1974, March

27 1975, March 1976, June 1976, November 1976 and April 1980

28 elections.

1    Plaintiffs contend that changes in the polling places for

2  elections in Merced County affect every Merced County voter – "if

3  as a result of a polling place change, the polling places are

4  less accessible to minority voters, thereby discouraging minority

5  voting, every minority voter in Merced County is injured

6  thereby."  (Doc. 199.)

7    The County rejoins that both temporal and geographical

8  standing are required.  Defendant asserts that in order for

9  Plaintiffs to establish actual harm or injury to at least one of

10  them, the individual must show that he or she: (1) was registered

11  in the precinct in which a change of polling place has been

12  challenged for lack of preclearance, and (2) was registered at

13  the time the challenged polling place was used.  (Doc. 206.)

14    The County also claims that Plaintiffs Ruiz and Lopez have

15  provided no evidence that they are registered voters of the

16  County of Merced nor that they resided in a district at the time

17  it had its polling place relocated (twenty to thirty years ago).

18  In particular, the County objects to Paragraph 4 of the

19  Plaintiffs' Avila Declaration, submitted as evidence of

20  Plaintiffs' registration status as voters of the County of

21  Merced, on the ground of hearsay.  "Mr. Avila purports to report

22  the information stated in the Merced County voter rolls, and does

23  so to prove the truth of the matter asserted, i.e., that Mr.

24  Lopez and Mr. Ruiz are registered to vote in Los Banos."  (Doc.

25  207, Objections to Avila Decl.)  This hearsay objection is well

26  taken.  Mr. Avila has no personal knowledge of the facts of

27  Plaintiffs' residence or voter registration status.  Plaintiffs

28  could have timely provided certified copies of the voter

19

registration records and offered them as public records pursuant to Federal Rules of Evidence 803(8). But, as Defendant correctly asserts, the Court cannot rely on Mr. Avila's hearsay statements regarding the contents of the voting records, which are inadmissible hearsay. The County's objection to Paragraph 4 of the Avila Declaration on grounds of hearsay is SUSTAINED.[5] After the matter was submitted, Plaintiffs filed a supplemental declaration by Mr. Avila, which contained certified copies of the voting records establishing Plaintiff Ruiz and Plaintiff Lopez are registered voters of the County of Merced.[6] (Doc. 214.) The County objected to the late filings; however, the Court finds there is no prejudice to County if the Court accepts the truth of certified voter records of Plaintiffs. (Doc. 215.) The Court deems Plaintiffs Ruiz and Lopez to be registered voters in the County for this standing analysis.

Nonetheless, the question remains whether Plaintiffs have

---

[5] At oral argument the Court also GRANTED the County's request to take judicial notice of the submission packet by the County to the civil Rights Division, Voting Section of the Department of Justice, for the 2005 MID redistricting. (Doc. 183, Request for Judicial Notice, Exhibit M.) and the corresponding supporting documents, including the May 24, 2007 STAPS report submitted in Christopher Skinnell's Sixth Declaration. (Doc. 208.) Courts may take judicial notice of adjudicative facts that are not subject to reasonable dispute. *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003). Courts may take judicial notice of some public records, including the records and reports of administrative bodies. *Id.*

[6] Plaintiff Felix Lopez, has been a registered voter of Merced County since April 22, 1988. Plaintiff Elizabeth Ruiz, has been a registered voter of Merced County since October 4, 1996. Doc. 204, Second Avila Decl., Exhibit A.

established § 5 VRA standing.  The issue to be resolved is whether Plaintiffs Lopez and Ruiz must live in the precinct that had its polling place relocated and must have been registered voters at the time each polling place was relocated, or whether it is sufficient that Plaintiffs currently reside in the "covered" county that administered and implemented the polling place changes.

Plaintiffs argue that prudential standing limitations are not applicable in a § 5 enforcement action.  They claim the use of the term "aggrieved party" in the Voting Rights Act denotes a broader standing limitation.  Plaintiffs correctly note that the Supreme Court has recognized that Congress may, through legislation, expand standing to the full extent permitted by Article III "thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.'"  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100-101 (quoting *Warth v. Seldin*, 422 U.S. 490, 501).

Legislative history in the Senate Report addressing the 1975 Amendment, which provides for a private citizen suit, discusses the term "aggrieved party" in § 3 of the Voting Rights Act as follows:

> The amendment proposed...would authorize courts to grant similar relief to private parties in suits brought to protect voting rights in covered and noncovered jurisdictions.  The term which I used, 'aggrieved person' is a commonly used phrase which appears throughout the United States Code.  The words are used in the Civil Rights Acts of 1964 and 1968, and a similar expression is employed in the Administrative Procedure Act.  An 'aggrieved person' is any person injured by an act of discrimination.  It may be an individual <u>or an organization</u> representing the interests of the injured person.  *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972) and

1    *NAACP v. Button*, 371 U.S. 415 (1963).

2    S.Rep.No. 295, 94th Congress, 1st Sess. 1975, reprinted in 1975

3    U.S.C.C.A.N. 774, 806 (emphasis added).  *Federal Elections*

4    *Commission v. Akins*, 524 U.S. 11 (1998), discusses the

5    implications of using the term "aggrieved" in the Fair Housing

6    Act, as it bears on citizen suit standing in the VRA:

7            History associates the word "aggrieved" with a
             congressional intent to cast the standing net broadly-
8            beyond the common-law interests and substantive
             statutory rights upon which "prudential" standing
9            traditionally rested.

10   524 U.S. at 19 (emphasis added).

11       The 1975 Amendment's use of the term 'aggrieved person'

12   coupled with the case law, including *Trafficante v. Metropolitan*

13   *Life Insurance Co.*, 409 U.S. 205 (1972) and *NAACP v. Button*, 371

14   U.S. 415 (1963) cited by the Senate Report, support an expansive

15   interpretation.[7]

16       Defendant rejoins that although Congress can expand standing

17   to the full extent permitted by Article III, "[i]n no event,

18   however, may Congress abrogate the Art. III minima: A plaintiff

19   must always have suffered 'a distinct and palpable injury to

20   himself,' that is likely to be redressed if the requested relief

21

22   ─────────────────

23       [7] *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S.
     205 (1972) a Fair Housing Act (FHA) case, held that the
24   definition of "person aggrieved," as "any person who claims to
     have been injured by a discriminatory housing practice,"
25   demonstrated congressional intent to define standing as broadly
     as permitted by Article III of the Constitution.  The Senate
26   Report addressing the 1975 amendment to the VRA similarly states
     that an "aggrieved person" within the meaning of the VRA is "any
27   person injured by an act of discrimination."  1975 U.S.C.C.A.N.
28   at 806.

1   is granted." *Gladstone Realtors v. Village of Bellwood*, 441 U.S.
2   91, 100 (1979) (internal citation omitted).  Plaintiffs must
3   still satisfy the "case or "controversy" requirement of Article
4   III by providing evidence that Plaintiffs have suffered an
5   "injury-in-fact."

6       Defendant's geographical standing challenge raises valid
7   questions about whether Plaintiffs suffered an "injury-in-fact"
8   as a result of the polling place changes.  *United States v. Hays*,
9   515 U.S. 737 (1995), supports the argument that a plaintiff must
10  reside in the precinct in which the challenged polling place
11  changes occurred.  In *Hays* all Appellees, except one, were
12  residents of Lincoln Parish, which was contained in the majority-
13  minority District 4 under Act 42, a districting plan.[8]  Appellees
14  brought suit challenging Act 42 under the State and Federal
15  Constitutions, as well as the VRA.  The District Court decided
16  that Act 42 violated the Constitution and enjoined its
17  enforcement.  The legislature, however, repealed Act 42 during
18  the course of the suit and enacted Act 1 which removed Lincoln
19  Parish from District 4.  On appeal the Supreme Court held that
20  appellees lacked standing to bring suit under Act 1.

21      Although the appellees insisted that they challenged Act 1
22  in its entirety, not District 4 in isolation, the Court found
23  this irrelevant.  The fact that Act 1 affects all Louisiana
24  voters by classifying each of them as a member of a particular
25  congressional district does not mean - even if Act 1 inflicts

26

27      [8] Louisiana is a covered jurisdiction under §4(b) of the
28  VRA.  *See Hays*, 515 U.S. at 739; 28 C.F.R. pt. 51, App.

1  race-based injury on some Louisiana voters - that every Louisiana
2  voter has standing to challenge Act 1 as a racial classification.
3  For plaintiffs to maintain suit they must be personally denied
4  equal treatment:

5          [W]here a plaintiff does not live in such a district,
           he or she does not suffer those special harms, and any
6          inference that the plaintiff has personally been
           subjected to a racial classification would not be
7          justified absent specific evidence tending to support
           that inference.  Unless such evidence is present, that
8          plaintiff would be asserting only a generalized
           grievance against governmental conduct of which he or
9          she does not approve.

10 *Hays*, 515 U.S. at 745-746.

11      Plaintiffs claim *Hays* does not apply to litigation under
12 Section 5, because Hays involved a challenge to racial
13 stigmatization and "representational harm" under the Equal
14 Protection Clause and VRA Section 2, to which the Court applied
15 prudential limitations on standing.  However, in *Hays* the Court
16 found the plaintiffs were not harmed by the specific voting
17 change because Plaintiffs did not reside in the affected
18 district, as in this case.  Plaintiffs also argue that Section 5
19 standing is broader than under an equal protection claim and that
20 Section 5 creates procedural, prophylactic rights to protect
21 minority voters, not just against representational harm, but also
22 against any change that would lead to retrogression in the
23 position of racial minorities with respect to their effective
24 exercise of the electoral franchise.  Plaintiffs cite *Beer v.*
25 *U.S.*, 425 U.S. 130, 141 (1976), for that proposition.  While *Beer*
26 stresses § 5's purpose to insure no voting procedure change is
27 made that is harmful to the voting rights of racial minorities,
28 it did not expand the private right of action for any change,

                                    24

1  absent an assertion of a true injury-in-fact.

2      Defendant relies on our earlier decision in this suit, *Lopez*
3  *v. Merced County*, 473 F.Supp.2d 1072 (E.D.Cal. 2007), to support
4  its argument that Plaintiffs cannot claim infringement of their
5  right to vote in an election in which they are not eligible to
6  vote.  The earlier ruling held that Plaintiffs, as registered
7  voters residing in the City of Los Banos, in Merced County, did
8  not have standing to challenge municipal elections in other
9  Merced County municipalities in which they do not reside and do
10 not vote.  Plaintiffs challenged over 200 annexations and other
11 boundary changes within the County of Merced and sought to enjoin
12 certification of election results in their own city, Los Banos,
13 and in the cities of Atwater, Dos Palos, Gustine and Livingston.
14 Plaintiffs' standing argument relied on the fact that the County
15 of Merced was a covered jurisdiction under § 5 of the Voting
16 Rights Act and their county domicile ostensibly covered all
17 polling places within the entire county.  As to this standing
18 challenge, the Court assumed, *arguendo*, that Defendant cities
19 were covered jurisdictions under § 5, and held that a § 5 suit
20 alleging failure to comply with VRA preclearance requirements may
21 only be brought against a city by a resident and registered voter
22 of that city.

23     The ruling was based on a series of reapportionment cases
24 brought under the VRA in the Second, Fifth and Eleventh Circuits
25 that also are instructive here.  In *Fairley v. Patterson*, 493
26 F.2d 598 (5th Cir. 1974) the fifth Circuit held that residents of
27 Forrest County, Mississippi did not have standing, as they were
28 not persons domiciled in the challenged under-represented voting

25

1  district.   A Second Circuit case, *League of Women Voters of*

2  *Nassau County v. Nassau County Board of Supervisors*, 737 F.2d 155

3  (2d Cir. 1984) similarly held that plaintiffs who challenged a

4  reapportionment that affected voting for Nassau County's Board of

5  Supervisors, but who resided in overrepresented municipalities

6  within Nassau County, lacked standing.   However, two plaintiffs

7  who did reside in underrepresented political subdivisions had

8  standing to sue.   *Wright v. Dougherty County*, 358 F.3d 1352 (11th

9  Cir. 2005) (per curiam), an Eleventh Circuit case, applied

10  *Fairley* by stating "injury results only to those domiciled in the

11  under-represented voting districts."   358 F.3d at 1355.   We

12  emphasized in our previous decision the importance of a

13  Plaintiff's domicile in the district in which the affected voting

14  change is made:

15              These cases stand directly for the proposition that,
           where it is alleged that a county-wide policy results
16         in underrepresentation of electors residing within
           certain county sub-units, only individuals residing
17         within underrepresented districts have standing to
           challenge the county-wide policy and the county-wide
18         election, because only those residing in
           underrepresented districts will be injured by the
19         election.   These cases do not directly address whether
           an individual residing in one municipality within a
20         covered county has standing to challenge a municipal
           election in a separate municipality (i.e., one in which
21         the plaintiff is not a resident) within the same
           covered county.   However, these cases all stand for the
22         proposition that plaintiffs must be injured by a
           challenged policy or election to have standing, and
23         injury is established by domicile in the
           underrepresented district.

24

25  *Lopez*, 473 F.Supp.2d at 1080.

26      The same reasoning applies to the County's polling place

27  changes.   Plaintiffs Ruiz and Lopez must themselves be injured by

28  their own precinct's unprecleared polling place relocations to

1    have standing; i.e., injury is suffered only by domiciliaries in

2    the precinct that has the unprecleared polling place change.

3    Otherwise, Plaintiffs' standing argument (harm to one Los Banos

4    voter, or Merced County voter, or minority voter, is harm to all

5    such voters) falls within the area of concern addressed in the

6    earlier *Lopez* decision: "This approach to standing would mean

7    that if the State of California were a covered jurisdiction, a

8    resident of Los Angeles would have standing to challenge non-

9    preclearance of a voting district in San Francisco.  This does

10   not satisfy the required element of injury in fact, as there can

11   be no infringement of a plaintiff's right to vote in an election

12   in which he or she is *not eligible* to vote."  *Id.*

13         Here the over 150 identified polling place relocations

14   occurred in precincts more than twenty-five years ago, within

15   Plaintiffs' city and county, but not in Plaintiffs' own voting

16   precinct where no polling stations changed without obtaining

17   preclearance.  Standing to bring suit under Section 5 of the VRA

18   requires a Plaintiff to show that his or her polling place was

19   wrongfully moved or relocated without preclearance.  Relocation

20   of a polling station without preclearance causes specific injury

21   to the right to vote of individuals who are registered at that

22   station.  Individuals who reside in a larger political

23   subdivision do not suffer such specific harm when their polling

24   stations either have not been changed or any changes have

25   complied with Section 5 preclearance requirements.

26         Plaintiffs, in reply, maintain that the policy underlying

27   the VRA is to be implemented by liberal statutory interpretation

28   which results in expansive standing to encourage voters at large

1    within any covered jurisdiction to bring citizen suits to protect

2    the voting rights of others who are directly and actually

3    affected.   Plaintiffs assert that generalized harm meets the

4    injury-in-fact requirement:

5                    Changes in the location of polling places enacted and
                     administered by Merced County for elections in the City
6                    of Los Banos affect every Los Banos voter.   Changes in
                     the location of polling places enacted and administered
7                    by Merced County for Merced County elections affect
                     every Merced County voter.   If those changes result in
8                    polling places that are less accessible to minority
                     voters, thereby discouraging minority voting, every
9                    minority voter in Merced County is injured thereby.

10   (Doc. 199, Plaintiffs' Opposition, p. 8.)   These allegations of

11   generalized harm suffered to not constitute "a distinct and

12   palpable injury," but rather fit the category of a generalized

13   grievance.   *See Hays*, 515 U.S. at 742-743.   Neither case law nor

14   a reading of the statute establishes that Congress meant to cast

15   the standing net so broadly.

16        Defendants further assert temporal standing challenge is

17   necessary for § 5 violations; i.e., Plaintiffs must have been

18   registered voters in the affected precinct at the time the

19   polling place change was made.   We decline to reach this issue

20   since Plaintiffs have failed to establish geographical standing.

21        Because Plaintiffs MAPA, Lopez and Ruiz lack standing, the

22   requisite jurisdiction is absent.   Defendant County of Merced's

23   Summary Judgment motion is GRANTED.

24

25                            VI.   <u>CONCLUSION</u>

26        For all the foregoing reasons, Plaintiffs' Motion for

27   Voluntary Dismissal of Defendant Los Banos is GRANTED WITH

28   PREJUDICE.   Defendant County of Merced's Motion for Summary

                                    28

Judgment is GRANTED as to Plaintiffs MAPA, Lopez and Ruiz for lack of standing.  The clerk shall enter judgment in favor of Defendants City of Los Banos and County of Merced and against all Plaintiffs.


SO ORDERED.


DATED:   January 16, 2008.


                                    /s/ Oliver W. Wanger
                                   Oliver W. Wanger
                            UNITED STATES DISTRICT JUDGE


                                    /s/ Jay S. Bybee
                                   Jay S. Bybee
                            UNITED STATES CIRCUIT JUDGE


                                    /s/ Anthony W. Ishii
                                   Anthony W. Ishii
                            UNITED STATES DISTRICT JUDGE

29