UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX M. LOPEZ, *et al.*,<br><br>                   Plaintiffs,<br><br>        vs.<br><br>MERCED COUNTY, CALIFORNIA, *et al.*,<br><br>                  Defendants. | 1:06-cv-01526 OWW DLB<br><br>**MEMORANDUM AND DECISION RE DEFENDANT CITY OF LOS BANOS'S MOTION FOR AWARD OF ATTORNEY'S FEES (DOC. 227) ASSIGNED TO A SINGLE JUDGE** |

## I.   INTRODUCTION.

Plaintiffs brought this case before a three-judge court under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, seeking declaratory and injunctive relief against Defendants Merced County, City of Los Banos, and others pending receipt of the required preclearances from the United States Attorney General of alleged voting changes made by Defendants that affect Los Banos and other Merced County political subdivisions. Plaintiffs alleged Defendants made numerous voting changes, including polling place changes, over a period of thirty years, which were implemented without receiving Section 5 preclearance in violation of federal law.

The case was dismissed when the court granted Plaintiffs' motion for voluntary dismissal as to Defendant City of Los Banos

1

1   on mootness grounds and also granted Defendant Merced County's

2   motion for summary judgment due to Plaintiffs' lack of standing.

3   (Doc. 221.)   The clerk entered judgment in favor of Defendants

4   City of Los Banos and Merced County and against all Plaintiffs on

5   January 16, 2008.   (Doc. 222.)

6        Before the court for decision is Defendant City of Los

7   Banos's Motion for Award of Attorney's Fees pursuant to 42 U.S.C.

8   § 1973l(e).[1]  Defendant seeks attorney's fees on the grounds that

9   Plaintiffs' lawsuit was unreasonable and groundless because: 1)

10  in filing the original complaint, Plaintiffs' counsel failed to

11  acknowledge that voting changes by Los Banos had already been

12  submitted to the Department of Justice (DOJ) approximately three

13  weeks before the complaint was filed, failed to make a proper

14  factual investigation in that he last checked the DOJ's Civil

15  Rights Division website (which lists Section 5 preclearance

16  submissions by jurisdictions) on September 27, 2006 prior to

17  filing the complaint on October 27, and submitted as Exhibit 3 to

18  his declaration an incomplete computer printout listing showing

19  preclearance filings by defendant jurisdictions filed with DOJ

20  between January 1980 and August 24, 2006 (which obviously did not

21  include relevant recent filings Defendants had made that were

22  reported on the website on October 10, 16 and 23); 2) in filing

23  their First Amended Complaint ("FAC") in March 2007, Plaintiffs

24  simply repeated the same allegations against Los Banos made in

25

26        [1] Defendant concurrently filed a motion for sanctions
27  pursuant to Fed. R. Civ. P. 11 but later withdrew this motion.
    (Docs. 228 & 239.) The motion has been assigned to a single judge
28  in accordance with a prior order of the Three Judge Court.

1  their original complaint which had already been mooted by the

2  receipt of the December 4, 2006 preclearance letter from DOJ,

3  filed on December 5 as Docket Item 66; and 3) Plaintiffs

4  proceeded to file their Second Amended Complaint ("SAC") on July

5  3 despite an offer by Defendants' counsel to stipulate to an

6  extension of the SAC filing deadline until July 20 to allow the

7  DOJ sixty-day notice period to elapse for the May 15 submission

8  (the deadline for DOJ to post an objection was July 14) so that

9  the parties could ascertain whether preclearance was received

10  prior to filing any SAC, which would obviate the need to file an

11  SAC.

12      Plaintiffs oppose the motion on four grounds: 1) the court

13  lacks jurisdiction, 2) Defendant Los Banos was not the prevailing

14  party, 3) this case does not meet the standard for award of fees

15  to a prevailing defendant, and 4) the motion was not timely

16  filed.

17                    II.  **BACKGROUND**.

18  A.   Summary of the Complaint.

19      Individual Plaintiffs Lopez and Ruiz are citizens of the

20  United States and are registered voters residing in the City of

21  Los Banos in Merced County, in the State and Eastern District of

22  California, Fresno Division.  (Doc. 2 at ¶3.)  Plaintiff MAPA is

23  a statewide community organization dedicated to democratic

24  principles of political representation for Latinos; its purpose

25  includes recruiting and advising Latino candidates.  (Doc. 172,

26  SAC at ¶¶3-4.)

27      Defendant City of Los Banos is a city organized under the

28  laws of the State of California and is located within the

                              **3**

boundaries of Merced County.  (*Id*. at ¶¶6-7.)  Defendant County
of Merced is a "covered political subdivision" subject to the
requirements of Section 5 of the Voting Rights Act ("VRA"), 42
U.S.C. § 1973c ("Section 5").

On September 23, 1975, Merced County was listed in the
Federal Register as a political subdivision covered under Section
4(b) of the Voting Rights Act of 1965, as amended by the Voting
Rights Act Amendments of 1975.  40 Fed.Reg. 43746 (Sept. 23,
1975); 28 C.F.R. § 51, Appendix to Part 51 (list of covered
jurisdictions and dates of coverage).[2]  Once subject to Section
5, a covered jurisdiction is prohibited from administering any
voting changes that are different from voting practices or
procedures that were in effect on November 1, 1972, unless that
change has been "precleared" through administrative preclearance
by the Attorney General or judicial preclearance by the United
States District Court for the District of Columbia.  28 C.F.R. §
51.1 (regulatory procedures for administering the VRA).

Specifically, Section 5 preclearance requires that a covered
state or political subdivision secure approval or "preclearance"
before enacting or seeking to administer "any voting
qualification or prerequisite to voting, or standard, practice,
or procedure with respect to voting different from that in force
or effect on November 1, 1972."  42 U.S.C. § 1973c.  To do so,
the covered jurisdiction must demonstrate, in either an
administrative proceeding before the United States Attorney

---

[2] The 1975 Amendments to the VRA became effective on August
6, 1975.  Pub. L. No. 94-73, 89 Stat 400.

4

General or a judicial proceeding seeking a declaratory judgment before the United States District Court for the District of Columbia, that the proposed change affecting voting "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group...." 28 C.F.R. § 51.1. If the covered jurisdiction cannot meet its burden, the United States Attorney General will deny preclearance or the United States District Court for the District of Columbia will not grant a declaratory judgment approving a change affecting voting. In the absence of either type of preclearance, the voting change cannot be implemented or enforced in any election. *Id*.

The VRA also contains a citizen-suit provision and a strong policy statement supporting enforcement of the VRA to protect voters against infringement of their right to vote. 42 U.S.C. § 1973a. Enforcement power is not solely vested in the Attorney General of the United States; citizens may also bring suit to enforce the VRA in federal court. The limited jurisdictional scope of the court's review under the VRA precludes consideration of the "merits," i.e., whether the underlying voting changes violate the VRA or whether voting rights of minorities are or are not being adversely affected. *See United States v. Louisiana*, 952 F. Supp. 1151, 1159-60 & n.9 (W.D. La. 1997).

Prior to the November 7, 2006 election, on October 27, 2006, Plaintiffs filed their original complaint for declaratory and injunctive relief pursuant to Section 5. (Doc. 2.) In their SAC, Plaintiffs alleged that Defendant Los Banos was a political subunit subject to the requirements of Section 5 of the VRA and

that it had failed to obtain the necessary approval pursuant to Section 5 for the adoption or implementation of changes in the election date for municipal elections and of changes affecting the number of vacancies within a given election for electing members to the Los Banos City Council.  (SAC at ¶10.)

Plaintiffs also alleged that Defendant County of Merced had failed to obtain the necessary approval pursuant to Section 5 for the adoption, approval or implementation of over 150 polling place changes that occurred in the 1970s and 1980s throughout the County of Merced.  *See* Doc. 172, SAC, Spreadsheet, ¶12 and Doc. 201, Plaintiffs' Statement of Disputed Material Facts in Opposition to County of Merced's Motion for Summary Judgment ("PSDF"), Exhibit A Spreadsheet.  The polling place changes described in the SAC and PSDF affected elections during the period March 1974 through April 1980 that occurred in various cities, special districts and annexations within the County of Merced, from Anderegg to Los Banos to AB-5.  (SAC at ¶12 and PSDF, Exhibit A.)

In their original complaint, which charged Los Banos with 26 annexations alleged to violate Section 5 preclearance requirements, Plaintiffs sought to enjoin the conduct and certification of elections for city council, mayor and voter initiatives in the City of Los Banos and four other Merced County cities, as well as elections for governing boards of seventeen special districts in Merced County, until Section 5 preclearance was received.  (Doc. 2 at 5, 12-13.)  In Plaintiffs' SAC, which retained only Merced County and the City of Los Banos as Defendants, they sought to enjoin any future elections conducted

in Merced County or for Los Banos City Council, as well as any
related certifications.  (Doc. 172 at 21-22.)

B.   <u>Procedural History and Disposition of the Case</u>.

Plaintiffs Felix Lopez and Elizabeth Ruiz filed their
complaint on October 27, 2006 naming as Defendants Merced County,
five cities within the county, and seventeen special districts.
The complaint alleged changes in voting made by these entities
were not precleared in violation of Section 5 of the Voting
Rights Act.  (Doc. 2.)  Plaintiffs concurrently filed a motion
for a temporary restraining order (TRO) but did not request a
hearing date.  (Doc. 2-4.)  The court set a hearing date and held
a hearing on November 3, 2006.  The court denied the TRO request
and the parties stipulated at the TRO hearing that elections
would be held as scheduled on November 7 but certification of the
results would await either the hearing and decision on
Plaintiffs' preliminary injunction motion or receipt of
preclearance from the United States Attorney General.  (Doc. 18.)

A preliminary injunction hearing was held on November 21,
2006 and, in an oral statement of decision, the three-judge court
denied the motion.  (Doc. 81.)  On December 4, 2006, the U.S.
Attorney General issued a letter of no objection to the Los Banos
annexations, granting the preclearance required under Section 5.
(Doc. 66.)  Notice of this receipt of preclearance was filed with
the court on December 5, 2006.  (*Id*.)

Plaintiffs filed a First Amended Complaint ("FAC"), deemed
filed as of March 7, 2007, that added as plaintiffs MAPA and
Antonio Erickson, a resident of Le Grand Community Services

**7**

1   District, and retained only four of the original defendants:
2   Merced County, the City of Los Banos, Le Grand Community Services
3   District and the Local Area Formation Commission.  (Docs. 108,
4   100-2.)  With respect to Los Banos, the FAC restated the
5   identical allegations asserted in the original complaint, namely
6   that Los Banos approved and implemented 26 annexations without
7   the required Section 5 preclearance.  (Compare Doc. 2 at ¶ 16
8   with Doc. 100-2 at ¶ 13.)

9       On March 14, 2007, Defendant Merced County filed a motion to
10  dismiss the FAC as moot under Fed. R. Civ. P. 12(b)(1).  (Doc.
11  146.)  On March 15, Defendant Los Banos filed a motion to dismiss
12  pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on mootness and
13  vagueness grounds.  (Doc. 149.)  Other Defendants filed motions
14  to dismiss on various grounds prior to the filing of the FAC,
15  which were later deemed responsive to the FAC.  (Doc. 143.)  On
16  April 23, 2007, the U.S. Attorney General issued a letter of no
17  objection to the Le Grand Community Services District's formation
18  and two annexations, granting the preclearance required under
19  Section 5.  (Doc. 159.)  This letter was filed with the court on
20  May 1, 2007.  (*Id.*)

21      The court heard all the motions to dismiss on May 16, 2007
22  and granted both Merced County and Los Banos's motions to dismiss
23  on grounds of mootness, in light of the fact that the 26
24  annexations approved and implemented by Los Banos had received
25  preclearance as of December 4, 2006 and that the formation and
26  two annexations to Le Grand Community Services District received
27  preclearance as of April 23, 2007.  (Doc. 66, 159.)  The court
28  also dismissed the claim of other, unspecified changes in voting

**8**

alleged by Plaintiffs in Paragraph 19 of the FAC because it failed to state a claim as the description of the claim was factually insufficient under Fed. R. Civ. P. 8.  (Doc. 166.)  The court further granted LAFCO's motion to dismiss and declined to rule on all other motions to dismiss.  (*Id.*)  Plaintiffs were granted leave to file a second amended complaint by July 3, 2007.  (*Id.*)

At the May 16 hearing, counsel for Defendant Merced County informed the court and parties that during an ongoing review of preclearance submissions it had identified two additional changes in voting in Los Banos that might arguably require Section 5 preclearance and, as a precaution, had submitted them to the Department of Justice for preclearance the day before, on May 15. One involved a 1984 decision to hold Los Banos City elections at the same time as general elections and the other involved a 1995 decision to stagger the terms of City Council members to allow two vacancies to be up for election every two years.  On July 3, 2007, Plaintiffs filed their Second Amended Complaint alleging Section 5 violations by Los Banos based on the two additional changes in voting identified at the May 16 hearing and submitted to DOJ on May 15.  (Doc. 172.)  The SAC also alleged Section 5 violations by Merced County related to numerous polling place changes adopted during the 1970s.  (*Id.*)

On July 16, 2007, the Attorney General issued a no objection letter in response to the May 15 submission of the two additional Los Banos voting changes.  This retroactive preclearance was filed with the court on July 20, 2007.  (Doc. 175.)  Plaintiffs moved to voluntarily dismiss Defendant Los Banos from the suit

1  pursuant to Fed. R. Civ. P. 41(a)(2) on September 27, 2007.

2  (Doc. 181.)   Both Defendant Los Banos and Defendant Merced County

3  filed notices of non-opposition to the motion.   (Docs. 193 &

4  194.)   In addition, Defendant Merced County filed a motion for

5  summary judgment on the SAC on standing, mootness and other

6  grounds on October 1, 2007.  (Doc. 184.)   The motions were heard

7  on November 15, 2007.   The court granted the motion for voluntary

8  dismissal of Defendant Los Banos on mootness grounds and for

9  summary judgment with respect to Defendant Merced County due to

10  lack of standing on January 16, 2008.  (Doc. 221.)   The clerk

11  entered judgment in favor of Defendants Los Banos and Merced

12  County and against all Plaintiffs on the same day.  (Doc. 222.)

13                    III. <u>LAW GOVERNING ATTORNEY'S FEES</u>.

14         The attorney's fees provision of the Voting Rights Act, 42

15  U.S.C. § 1973l(e) specifies: "[i]n any action or proceeding to

16  enforce the voting guarantees of the fourteenth or fifteenth

17  amendment, the court, in its discretion, may allow the prevailing

18  party, other than the United States, a reasonable attorney's

19  fee...as part of the costs."  A prevailing defendant is entitled

20  to an attorney's fee award under a civil rights fee shifting

21  statute only if the plaintiff's claims were "frivolous,

22  unreasonable, or without foundation, even though not brought in

23  subjective bad faith."  *Christiansburg Garment Co. v. EEOC*, 434

24  U.S. 412, 421 (1978).

25         Because Congress intended to promote vigorous enforcement of

26  civil rights laws, "a district court must exercise caution in

27  awarding fees to a prevailing defendant in order to avoid

28  discouraging legitimate suits that may not be 'airtight.'"  *See*

1    *EEOC v. Bruno's Restaurant*, 13 F.3d 285, 287 (9th Cir. 1993).

2    The Supreme Court warned in *Christiansburg* against the

3    "temptation to engage in post hoc reasoning by concluding that,

4    because a plaintiff did not ultimately prevail, his action must

5    have been unreasonable or without foundation."  434 U.S. at

6    421-22.  For example, a Title VII complaint that makes out a

7    prima facie showing of disparate treatment but ultimately fails

8    on the merits should not be deemed "clearly frivolous."  *See*

9    *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995).

10        The similar language of fee-shifting statutes requires that

11   "they are to be interpreted alike."  *Indep. Fed'n of Flight*

12   *Attendants v. Zipes*, 491 U.S. 754, 759 n.2 (1989).  The Supreme

13   Court noted in *Hensley* that the standards set forth in that

14   opinion, which involved the Civil Rights Attorney's Fees Awards

15   Act of 1976, 42 U.S.C. § 1988, apply to all fee-shifting statutes

16   with "prevailing party" language.  *Hensley v. Eckerhart*, 461 U.S.

17   424, 433 n.7 (1983).

18

19                      IV. <u>DISCUSSION</u>.

20

21   A.   <u>The Court's Jurisdiction Over the Motion for Attorney's</u>
22        <u>Fees</u>.

23        Plaintiffs argue the court lacks subject matter jurisdiction

24   over the motion for attorney's fees because the suit was

25   dismissed on jurisdictional grounds, namely on grounds of

26   mootness and lack of standing.  Plaintiffs cite *Smith v. Brady*

27   for the principle that subject matter jurisdiction over the

28   underlying suit is a prerequisite to consideration of a motion

                              11

for attorney's fees.  972 F.2d 1095, 1097 (9th Cir. 1992)("[i]f
the district court lacked jurisdiction over the underlying suit
'it had no authority to award attorney's fees.'")(quoting *Latch
v. United States*, 842 F.2d 1031, 1033 (9th Cir. 1988)).

Courts of the Ninth Circuit have "consistently applied this
rule to a broad array of fee-shifting statutes."  *Zambrano v.
Immigration and Naturalization Serv.*, 282 F.3d 1145, 1150 (9th
Cir. 2002)(affirming district court denial of attorney's fees
motion based on lack of jurisdiction and noting "subject matter
jurisdiction over the underlying action is a prerequisite"); *see
also Clark v. Busey*, 959 F.2d 808, 810 (9th Cir. 2002) ("Subject
matter jurisdiction to decide the merits of the underlying action
is a condition precedent to an award of fees or costs under the
EAJA."); *Branson v. Nott*, 62 F.3d 287, 292-93 (9th Cir.
1995)("[B]ecause the district court lacked subject matter
jurisdiction over Branson's purported civil rights claim in the
first instance, it also lacked the power to award attorney's fees
under the civil rights attorney fee statute."); *In re Knight*, 207
F.3d 1115, 1119 (9th Cir. 2000)(reversing district court's grant
of attorney's fees where subject matter jurisdiction was lacking
in ERISA case); *Latch*, 842 F.2d at 1033 (no authority to award
attorney's fees without subject matter jurisdiction under the Tax
Code).

It is undisputed that Plaintiffs' FAC was dismissed as to
Los Banos on mootness grounds after Los Banos received
preclearance from the DOJ on December 4, 2006 with respect to the
26 annexations alleged to violate Section 5.  (Doc. 166.); *Foster
v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003)( "Mootness is a

12

1  jurisdictional issue, and federal courts have no jurisdiction to
2  hear a case that is moot").  It is further undisputed that the
3  SAC was dismissed as moot with respect to Los Banos after the
4  city received DOJ preclearance on July 16, 2007 of the two
5  additional voting changes submitted on May 15.  (Doc. 221.)
6  Finally, the entire SAC was dismissed for Plaintiffs' lack of
7  standing.  (*Id.*); *see Warth v. Seldin*, 422 U.S. 490, 498-99
8  (1975) (federal court jurisdiction can be invoked only when
9  plaintiffs have standing).  This lack of jurisdiction was the
10 basis for dismissal as reflected by the January 16, 2008 order
11 holding "the requisite jurisdiction is absent."  (Doc. 221 at
12 28.)

13      As the court lacked subject matter jurisdiction over the
14 underlying Section 5 Voting Rights Act suit, as to Los Banos,
15 there is no authority to entertain Defendant's motion for
16 attorney's fees.

17

18 B.   Defendant as Prevailing Party.

19      Under the Voting Rights Act, fees may be awarded to "the
20 prevailing party."  42 U.S.C. §1973l(e).  A prevailing party must
21 obtain at least some relief on the merits of the claim.  *Farrar
22 v. Hobby*, 506 U.S. 103, 111 (1992).  The Ninth Circuit has held
23 where "dismissal is mandated by a lack of subject matter
24 jurisdiction, a defendant is not a 'prevailing' party within the
25 meaning of § 1988."[3]  *Branson*, 62 F.3d at 293 (citing *Keene Corp.*

26 _____

27      [3] Numerous statutes authorize the award of attorney's fees
28 to the "prevailing party," including the Civil Rights Act of
   1964, the Civil Rights Attorney's Fees Award Act of 1976, and the

13

*v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990)).  The *Keene* court

explained that to be a prevailing party:

> [A] party must succeed on some claim or significant
> issue in the litigation which achieves some benefit the
> parties sought.  <u>Where a complaint has been dismissed
> for lack of subject matter jurisdiction, the defendant
> has not prevailed</u> over the plaintiff on any issue
> central to the merits of the litigation.

*Keene*, 908 F.2d at 298 (8th Cir. 1990)(emphasis added); *see also*

*Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003).

Defendant cites Moore's Federal Practice for support that it

has prevailed at every stage of the litigation and is therefore

the prevailing party:

> Generally speaking, if the plaintiff is not the
> prevailing party, then the defendant is.  Because a
> plaintiff prevails by achieving some of the benefit
> sought in bringing suit, it follows that a defendant is
> a prevailing party only if the plaintiff obtains no
> relief whatsoever from the litigation.  <u>If the case is
> litigated to judgment on the merits in favor of the
> defendant</u>, the defendant is the prevailing party.

10-54 Moore's Federal Practice - Civil § 54.171 (emphasis added).

Defendant argues it prevailed throughout the litigation in that

Plaintiffs' TRO and preliminary injunction requests were denied,

the court ruled in Defendant's favor on its motion to dismiss the

FAC, and the court dismissed the SAC with prejudice entering

judgment in favor of the city.  This excerpt belies Defendant's

argument because the case was not "litigated to judgment on the

merits in favor of the defendant."  Rather, judgment was entered

---

Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973l(e),
invoked by Defendant here.  The Supreme Court interprets these
fee-shifting provisions consistently. *Buckhannon Bd. & Care
Home, Inc. V. W.Va. Dep't of Health and Human Res.*, 532 U.S. 598,
602-03 n.4 (2001).

1  in Defendant's favor on the basis of a lack of subject matter

2  jurisdiction.  The weight of authority states that a defendant is

3  not a prevailing party where a complaint is dismissed for lack of

4  subject matter jurisdiction.

5       Accordingly, because Plaintiffs' FAC and SAC were both

6  dismissed for lack of subject matter jurisdiction, Defendant is

7  not the prevailing party and is therefore not entitled to an

8  award of attorney's fees pursuant to 42 U.S.C. § 1973l(e).

9

10 C.   The Christiansburg Standard.

11      Defendant argues Plaintiffs acted unreasonably in filing and

12 pursuing their action and that, while not required under

13 *Christiansburg*, its actions are properly characterized as

14 improper and taken in bad faith.  Specifically, Defendant alleges

15 Plaintiffs either improperly investigated the Defendants'

16 preclearance filings with DOJ prior to filing their original

17 complaint or falsely portrayed the Defendants as having failed to

18 file any preclearance submissions in over thirty years for the

19 alleged changes knowing that Defendants had made preclearance

20 submissions to DOJ in October 2006.  Defendant alleges that

21 Plaintiffs improperly proceeded with the suit without sufficient

22 factual basis.

23      Defendant further characterizes Plaintiffs' filing of the

24 FAC as improper since it was filed knowing the claims against Los

25 Banos had been mooted by the receipt of the December 4, 2006 DOJ

26 preclearance letter.  When questioned about those claims at the

27 May 16 hearing, Plaintiffs admitted the claims with respect to

28 Los Banos's allegedly illegal 26 annexations were moot as of the

15

1 filing date of the FAC.  Finally, Defendant argues Plaintiffs
2 demonstrated the same improper course of conduct in filing their
3 SAC only days before the arguably predictable receipt of DOJ's
4 July 16, 2007 preclearance letter, which mooted the allegations
5 against Los Banos asserted in the SAC.

6     While the timing of various activities by Plaintiffs may be
7 questionable, Defendant's suggestion that this action was
8 meritless throughout the course of the litigation is without
9 basis.  Many voting changes going back thirty years had not been
10 precleared.  Defendant claims "the purpose of section 5 is to see
11 that covered jurisdictions submit changes for Justice Department
12 review."  (Doc. 229 at 16.)  This is an incomplete statement of
13 the law.  Section 5 requires that a jurisdiction submitting any
14 voting changes for DOJ administrative preclearance either obtain
15 an affirmative response by the DOJ preclearing the submission
16 within 60 days or that the Attorney General has "not interposed"
17 an objection within this time, thereby obtaining clearance by
18 operation of law.  42 U.S.C. § 1973c.  Either way, it is
19 insufficient under Section 5 for the jurisdiction to simply
20 submit the voting changes to the Attorney General; it must also
21 obtain preclearance either affirmatively or by operation of law
22 within 60 days.

23     The Supreme Court made Section 5's requirements in this
24 regard explicit in *Lopez v. Monterey County, California*:

25         A jurisdiction subject to § 5's requirements must
        obtain either judicial or administrative preclearance
26         <u>before</u> implementing a voting change.  <u>No new voting</u>
        <u>practice is enforceable unless the covered jurisdiction</u>
27         <u>has succeeded in obtaining preclearance</u>.  If a voting
        change subject to § 5 has not been precleared, § 5
28         plaintiffs are entitled to an injunction prohibiting

1

2                    implementation of the change.

3       519 U.S. 9, 20 (1996)(emphasis added)(citations omitted).  Here
4       Los Banos did not receive its preclearance letters related to its
5       voting changes until December 4, 2006 for the 26 annexations
6       (alleged to violate Section 5 in the FAC) and until July 16, 2007
7       for the 1984 city election time change and 1995 change to stagger
8       city council terms (alleged to violate Section 5 in the SAC).  At
9       the times the original complaint and the SAC were filed, these
10      Los Banos voting changes were in violation of Section 5 because
11      the changes had only been submitted for preclearance to DOJ and
12      had not yet "succeeded in obtaining preclearance."

13           However, at the time the FAC was filed in March 2007, the
14      allegations regarding the 26 annexations were moot because DOJ
15      had precleared these changes on December 4, as Plaintiffs
16      admitted at the May 16 hearing.  Even though these allegations
17      were moot, there were two other additional voting changes in Los
18      Banos that had not yet been precleared which were acknowledged by
19      Defendants' counsel at the hearing; these were submitted to DOJ
20      on May 15.  Los Banos was still in violation of Section 5 with
21      respect to these voting changes as of the March 2007 FAC filing
22      date, even though this was unknown to Plaintiffs when they filed
23      the FAC.  In their SAC, Plaintiffs' sole allegations against Los
24      Banos concerned the two additional changes submitted for
25      preclearance May 15.

26           Because Defendant's motion is dismissed on other grounds, it
27      is arguably unnecessary to decide this issue.  However, the
28      strong policy favoring voting rights actions and the attorney's

                                    17

1   fees jurisprudence requiring that plaintiffs' claims be frivolous
2   or unreasonable before defendants are awarded fees militates in
3   favor of denial of Los Banos's attorney's fees request.
4
5   D.   <u>Timing of Filing of Motion</u>.
6        Fed. R. Civ. P. 54(d)(2) provides that unless otherwise
7   ordered by the court, a motion for attorney's fees "must be filed
8   no later than 14 days after entry of judgment...."  Pursuant to
9   EDCA L.R. 54-293(a), in this court, such motions "shall be filed
10  not later than thirty (30) days after entry of final judgment."
11  Here judgment was entered on January 16, 2008.  Plaintiffs point
12  out that under Fed. R. Civ. P. 6 the last day to file the fees
13  motion was February 15, 2008 and here Defendant filed it February
14  16, 2008.  Plaintiffs argue the motion should be denied because
15  it was not timely filed.
16       Defendant's counsel explains that he lost track of time
17  working late into the evening on February 15, 2008 and filed the
18  first document of the motion at 12:40 a.m. with the last
19  supporting document filed at 4:10 a.m. February 16.  (Doc. 242-4,
20  Declaration of Joseph Ellinwood In Support of Motion for Award of
21  Attorney's Fees, at 2.)  A review of the ECF record shows the
22  notice of motion was filed at 12:40 a.m. and the Memorandum of
23  Points and Authorities was filed at 1:56 a.m.  Defendant explains
24  he has been diagnosed with ADD and simply lost track of time.
25       This two hour tardiness resulted in no prejudice.
26  Ordinarily, attorney neglect is not a legal justification for
27  failure to comply with a filing deadline.  However, counsel's
28  attention deficit disorder provides a reasonable basis for

18

1  **excusing the neglect.**

2

3                          **V.   CONCLUSION.**

4       **Defendant's Motion for Award of Attorney's Fees has been**

5  **fully considered on the merits.   For all the foregoing reasons,**

6  **the motion is DENIED.**

7  IT IS SO ORDERED.

8  **Dated:    September 26, 2008**              _____/s/ Oliver W. Wanger_____
                                           UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28